UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYDIA HUSS, <br><br> Plaintiff, <br><br> v. <br><br> HAMPDEN COUNTY SHERIFF'S DEPARTMENT, SHERIFF NICHOLAS COCCHI, SCUELIN THOMPSON, RACHEL REALE, SARAH BERNARD, and JOHN/JANE DOES NOS. 1-5, <br><br> Defendants. | CIVIL ACTION NO. 22cv11305 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

## INTRODUCTION

1. This is a complaint against the Hampden County Sheriff's Department ("HCDS"), Sheriff Nicholas Cocchi ("Sheriff Cocchi"), and several of HCSD's employees, for the unnecessary pain and suffering these defendants caused Plaintiff Lydia Huss.

2. As explained below, Ms. Huss was unexpectedly arrested, thrown in jail, and indiscriminately and callously denied the prescription medication that she needs. Ms. Huss continually requested this medication and additional medical care, explaining that she was in great mental and physical pain. Defendants ignored Ms. Huss's pleas, laughed at Ms. Huss as she became sicker and sicker, and treated her as less than a human. No one decided to even attempt to ease Ms. Huss's pain. It was only when Ms. Huss was on the verge of death that she was finally sent to the nearby hospital to receive the help she needed.

1

3. What's more, defendants not only failed to provide medical care, but also continued to detain Ms. Huss without any legal process for ten days solely for not paying a $50 fine. In short, defendants denied Ms. Huss medical care and refused to release Ms. Huss so that she could obtain the medical care she needed outside of the correctional center.

## PARTIES

4. Plaintiff Lydia Huss is a former pretrial detainee at the Western Massachusetts Regional Women's Correctional Center (the "WCC"). Ms. Huss is a resident of Worcester, MA.

5. Defendant HCSD is a component of the Massachusetts state government. The HCSD operates the WCC, located in Chicopee, Massachusetts.

6. Defendant Sheriff Cocchi was at all relevant times the Sheriff of Hampden County. His actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts. He is sued in his individual capacity.

7. Defendant Scuelin Thompson ("Nurse Thompson") was at all relevant times a Registered Nurse and employee of the WCC. Her actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts. She is sued in her individual capacity.

8. Defendant Rachel Reale ("Nurse Reale") was at all relevant times a Registered Nurse and employee of the WCC. Her actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts. She is sued in her individual capacity.

9. Defendant Sarah Bernard ("Nurse Bernard") was at all relevant times a Registered Nurse and employee of the WCC. Her actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts. She is sued in her individual capacity.

10. John/Jane Does Nos. 1-5 are employees of the WCC who are not yet identified.

## JURISDICTION AND VENUE

11. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper under 28 U.S.C. § 1391.

## ALLEGATIONS

**I.  Following An Unexpected And Sudden Arrest, Defendants Denied Ms. Huss Prescription Medication Essential To Her Health.**

12. On December 28, 2021, Ms. Huss drove to her local Walgreens and picked up her prescription medications as she often does. That same day, a police officer pulled Ms. Huss over, explaining that Ms. Huss had an issue with her break light. This stop escalated, however, and Ms. Huss was arrested and brought in to the WCC.

13. During her intake-admission screen, Ms. Huss met with a Registered Nurse, Nurse Reale, and submitted to a lengthy medical assessment. Ms. Huss carefully explained that she suffers from anxiety and depression, and listed each medication she was prescribed. She was also honest about her previous struggle with Opioid Use Disorder, but made it clear to Nurse Reale that she has not used any opioids for over ten years.

14. After explaining why she needed the medications that she is regularly prescribed, Ms. Huss requested to continue receiving these prescriptions while detained at the WCC. Nurse Reale called Walgreens to check that Ms. Huss was prescribed these medications, and Walgreens confirmed. Ms. Huss's doctor had in fact called in orders for these medications in just the previous few days.

3

15. Nonetheless, Nurse Reale refused to provide Ms. Huss one of her medications—Seroquel. Ms. Huss was told it was WCC's policy and procedure to deny such medications if the dosage is less than 300mg.

## II. Defendants Failed To Provide Ms. Huss Three Of Her Regularly Scheduled Doses Of Seroquel And Refused To Provide Sufficient Medical Care As Ms. Huss Quickly Fell Ill.

16. Once Ms. Huss was detained in her cell, she began to feel anxious and nauseous. After failing to receive her first dose of Seroquel, Ms. Huss began having panic attacks and was not able to sleep—the exact consequence Ms. Huss was scared of happening if she was not provided her medication. Soon after, she started vomiting over and over from her anxiety.

17. Ms. Huss began asking for help in the middle of the night, but her pleas went unanswered. It was not until the next morning that another Registered Nurse, Nurse Thompson, decided to check-in on Ms. Huss.

18. Ms. Huss's first encounter with Nurse Thompson did not result in any assistance. Based on information and belief, at this meeting Nurse Thompson communicated to Ms. Huss that she believed Ms. Huss was sick because she was detoxing. Nurse Thompson stated to Ms. Huss, "you have been annoying everyone since you got here," and told Ms. Huss that Ms. Huss could get help if she only admitted to detoxing. Ms. Huss explained to Nurse Thompson that she was not detoxing and even told Nurse Thompson that she could check Ms. Huss's urine to confirm. Ms. Huss explained she was rather suffering from cyclical vomiting and requested her medication so that she could feel better. Nurse Thompson refused.

19. Nurse Thompson continued to show a lack of empathy for Ms. Huss's situation. Based on information and belief, at one point after Ms. Huss had been vomiting, Nurse

4

Thompson threw paper towels at Ms. Huss and told her: "Ew, you need to wipe your face before I help you, nobody wants to look at that."

20. A third Registered Nurse, Nurse Bernard, checked-in on Ms. Huss later that morning. According to Nurse Bernard's notes, Ms. Huss begged Nurse Bernard: "*Please help me.*" Nurse Bernard's notes also show that Ms. Huss communicated that she "*need[ed] help*" and "*need[ed] [her] Seroquel . . . so [she doesn't] have panic attacks like this.*"

21. Nurse Bernard also noted:

   a. "*[Ms. Huss's] face is diaphoretic and botched with red*";

   b. "*[P]atient is hyperventilating speaking in bewteen [sic] sobbing and taking short deep breaths*";

   c. "*Patient is wretching and vomiting up yellow bile*"; and,

   d. "*Patient had diarrhea 4x while assessing.*"

22. Nurse Bernard still refused to provide Ms. Huss her Seroquel even though Ms. Huss's health was visibly declining. In fact, the only assistance provided to Ms. Huss was Pepto-Bismol and Gatorade. Defendants failed to provide adequate medical treatment.

23. Ms. Huss was scheduled to attend court that morning, but was so ill that she could not be transported to the court. Instead, a corrections officer brought an iPad to Ms. Huss's cell so that Ms. Huss could virtually appear before the court. The officer told Ms. Huss to "turn away from the camera" if she was going to vomit.

24. Following this hearing, Ms. Huss was supposed to be released on personal recognizance. Sheriff Cocchi continued to detain Ms. Huss, however, and she only became more ill. At approximately 2pm, Nurse Thompson returned to Ms. Huss's cell. According to Nurse

Thompson's notes, Ms. Huss was "*trembling*" and reported tightness in her chest and difficulty breathing. Ms. Huss also requested to go to the hospital, explaining that she had been "*like this*" before and in the past would go to the hospital "*for IV fluids and pain medications.*" Nurse Thompson denied Ms. Huss's request and solely provided Chicken bouillon cubes. Here, again, defendants failed to provide adequate medical treatment.

25. Another seven hours passed until a nurse returned to evaluate Ms. Huss. As Ms. Huss had also explained to Nurse Thompson, Ms. Huss told Nurse Reale that "*this happens sometimes. It has been a long time since it happened . . . I usually take Zofran and they have to give me iv fluids.*" Nurse Reale noted that Ms. Huss complained of "*pain radiating across low [abdomen]*," Ms. Huss was "*constant[ly] vomiting*" such that she "*would sip water and immediately water and bile would be vomited,*" and Ms. Huss was "*writhing on [the] mattress on the floor.*" Ms. Huss also communicated to Nurse Reale that she had uncontrollable diarrhea.

26. Ms. Huss at this point was begging Nurse Reale for help:

    a. "*I can't stop vomiting. I can't keep anything down*";

    b. "*I started to get car sick on the way here last night and since I got down here I can't stop vomiting*";

    c. "*I am dehydrated. Everything hurts*";

    d. "*I can't keep anything down*";

    e. "*[I]t hurts so bad*";

    f. "*[P]lease do something.*"

At this point, Ms. Huss had begun vomiting blood and her blood pressured had dropped dangerously low, to 88/50. Yet, medical treatment was *still* not provided to Ms. Huss.

27. It was not until 4:00 a.m. on December 30, 2021—over twenty-four hours after Ms. Huss had begun suffering—that she was finally sent to Baystate Medical Center ("Baystate"). On the way out, Ms. Huss suffered from another incident of diarrhea. She was then thrown into a hard, cold shower, where she slipped and fell. Corrections officers failed to help—they just laughed.

28. Once Ms. Huss was admitted to Baystate, no one would allow Ms. Huss to call anyone, including her family or her lawyer. Ms. Huss was in extreme distress because her family did not know she was in the hospital or her health status. Most of the correctional officers told Ms. Huss that they did not care.

29. Ms. Huss could have been spared the severe pain and illness she endured. Her pain and suffering was caused by the defendants' conduct described above, including their deliberate, intentional, and unreasonable refusal to provide Ms. Huss medication or adequate medical treatment.

### III. Defendants Continued To Deny Ms. Huss Her Prescription Medication After Ms. Huss's Return From The Hospital.

30. When Ms. Huss returned to the WCC from the hospital on January 2, 2022, some people were surprised to see her, as they stated that Ms. Huss had "looked dead" before being brought to Baystate. At this point, Ms. Huss was feeling a little better, but was still struggling from anxiety, panic attacks, and insomnia. She again requested medication—Seroquel, Zofran, and any sleep aid—but was once more denied medication.

31. Ms. Huss was also moved to a different cell, which was extremely cold and had a bright light that was on all night, making it even more difficult to fall asleep. That night, Ms. Huss requested medication for her nausea two separate times as well as once for constipation.

Those requested medications were not provided, and the correctional officer did not even send a nurse to see Ms. Huss.

32. Finally, as Ms. Huss continued to beg for her medication, defendants acquiesced. However, without any explanation, Ms. Huss was provided 250mg per day of Seroquel, a significant increase from her usual dose. She was later told by a WCC employee that the Nurses had used someone else's "card" for the Seroquel which, according to this employee, meant that they had given Ms. Huss another detainee's unused medication.

### IV. Ms. Huss Was Detained With No Legal Process For Ten Days For A Single $50 Fine.

33. Ms. Huss was not only denied adequate medical care, but was also denied legal process for ten days.

34. Ms. Huss was initially arrested on December 28, 2021, and was supposed to be released on personal recognizance on December 29, 2021. Defendants nonetheless continued to detain Ms. Huss.

35. Separately, Ms. Huss also had an outstanding warrant for failing to renew her vehicle registration. This infraction only required Ms. Huss to pay a *$50 fine*. Yet, from December 29, 2021 until January 7, 2022, Ms. Huss was provided no opportunity to pay this fine nor any opportunity to be heard in court.

36. Ms. Huss was ultimately released to Leominster District Court for the first time on January 7, 2022—ten days after she was initially arrested—where she paid the $50 fine and was finally able to return home. Failing to provide Ms. Huss the legal process she was owed resulted in the pain and suffering described above and the intentional and unnecessary loss of

liberty. These are ten days that Ms. Huss will never be able to get back and, unfortunately, will never be able to forget.

## DAMAGES

37. As a result of the defendants' actions, Ms. Huss experienced conscious pain and suffering. The failure of Nurse Thompson, Nurse Reale, and Nurse Bernard to provide Ms. Huss her prescription medication and adequate medical care, the failure of John/Jane Doe defendants to intervene, the HCSD's discrimination against Ms. Huss, and Sheriff Cocchi's continued detainment of Ms. Huss without legal process all caused Ms. Huss to suffer from anxiety, panic attacks, cyclical vomiting, tightness in her chest, difficulty breathing, and severe physical pain and emotional distress, among others.

38. In addition to the above, as a result of Sheriff Cocchi's unlawful detainment of Ms. Huss, Ms. Huss suffered the loss of her liberty.

39. Defendants' actions further resulted in Ms. Huss being admitted to Baystate and having to pay medical fees in connection with her stay.

## CLAIMS FOR RELIEF

### Count I – Unconstitutional Failure to Provide Medical Care
### In Violation of 42 U.S.C. § 1983
(against defendants Nurse Thompson, Nurse Reale,
Nurse Bernard, and John/Jane Does Nos. 1-5, in their individual capacities)

40. Plaintiff incorporates by reference the foregoing paragraphs as if set forth here in their entirety.

41. Defendants Nurse Thompson, Nurse Reale, Nurse Bernard, and John/Jane Does Nos. 1-5 are persons within the meaning of 42 U.S.C. § 1983.

9

42. From December 28, 2021 through January 7, 2022, Ms. Huss was held in custody by the HCSD.

43. On December 28, 29, and 30, 2021, and January 2, 2022, defendants Nurse Thompson, Nurse Reale, Nurse Bernard, and John/Jane Does Nos. 1-5 were aware of Ms. Huss's serious medical needs, and deliberately and arbitrarily refused to provide her with the prescription medication, Seroquel, she required for her serious medical needs.

44. Defendants also deliberately and unreasonably refused to provide Ms. Huss with adequate medical treatment once Ms. Huss began vomiting, showing other signs of illness, and requested medical care.

45. These defendants' refusal to obtain prompt and appropriate medical treatment caused Ms. Huss to experience pain and suffering.

46. These defendants' actions deprived Ms. Huss of her rights, privileges, or immunities secured by the Constitution and laws, including her clearly established rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983.

47. The defendants' actions were taken with reckless disregard for Ms. Huss's constitutional rights.

48. As a result of the defendants' actions, Ms. Huss suffered the damages described above in Paragraphs 37 through 39.

**Count II – Unconstitutional Failure to Intervene
In Violation of 42 U.S.C. § 1983**
(against defendants John/Jane Does Nos. 1-5, in their individual capacities)

49. Plaintiff incorporates by reference the foregoing paragraphs as if set forth here in their entirety.

50. Defendants John/Jane Does Nos. 1-5 are persons within the meaning of 42 U.S.C. § 1983.

51. From December 28, 2021 through January 7, 2022, Ms. Huss was held in custody by the HCSD.

52. On December 28, 29, and 30, 2021, and January 2, 2022, defendants John/Jane Does Nos. 1-5 were aware of Ms. Huss's serious medical needs and that defendants Nurse Thompson, Nurse Reale, and Nurse Bernard deliberately and arbitrarily refused to provide Ms. Huss with the prescription medication, Seroquel, she required for her serious medical needs.

53. Defendants were also aware that defendants Nurse Thompson, Nurse Reale, and Nurse Bernard deliberately and unreasonably refused to provide Ms. Huss with adequate medical treatment once Ms. Huss began vomiting and showing other signs of illness.

54. These defendants' refusal to intervene allowed Ms. Huss to continue to receive inadequate medical care, and caused Ms. Huss to experience pain and suffering.

55. These defendants' actions deprived Ms. Huss of her rights, privileges, or immunities secured by the Constitution and laws, including her clearly established rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983.

56. The defendants' actions were taken with reckless disregard for Ms. Huss's constitutional rights.

57. As a result of the defendants' actions, Ms. Huss suffered the damages described above in Paragraphs 37 through 39.

**Count III – Unconstitutional Violation of Due Process
In Violation of 42 U.S.C. § 1983**
(against defendant Sheriff Cocchi, in his individual capacity)

58. Plaintiff incorporates by reference the foregoing paragraphs as if set forth here in their entirety.

59. Defendant Sheriff Cocchi is a person within the meaning of 42 U.S.C. § 1983.

60. From December 28, 2021 through January 7, 2022, Ms. Huss was held in custody by the HCSD.

61. The court ordered Ms. Huss's release on personal recognizance on December 29, 2021. Yet, Defendant Sheriff Cocchi did not release Ms. Huss. Ms. Huss was not brought before the Leominster District Court on an outstanding warrant for a registration infraction until January 7, 2022. Accordingly, defendant Sheriff Cocchi unreasonably detained Ms. Huss without any legal process for ten days.

62. The defendant's failure to provide due process caused Ms. Huss to experience pain and suffering.

63. The defendant's actions deprived Ms. Huss of her rights, privileges, or immunities secured by the Constitution and laws, including her clearly established rights under the Fourteenth Amendment to the U.S. Constitution in violation of 42 U.S.C. § 1983.

64. The defendant's actions were taken with reckless disregard for Ms. Huss's constitutional rights.

65. As a result of the defendant's actions, Ms. Huss suffered the damages described above in Paragraphs 37 through 39.

### Count IV – Violation of Title II of the Americans with Disabilities Act (ADA)
(against defendant Hampden County Sheriff's Department)

66. Plaintiff incorporates by reference the foregoing paragraphs as if set forth here in their entirety.

67. The Hampden County Sheriff's Department is a public entity subject to the Americans with Disabilities Act ("ADA").

68. Drug and alcohol addiction is a "disability" under the ADA. *See* 42 U.S.C. §§ 12102 and 12131(2); 28 C.F.R. § 35.108 (The phrase "physical or mental impairment includes, but is not limited to . . . drug addiction, and alcoholism.").

69. From December 28, 2021 through January 7, 2022, Ms. Huss was held in custody by the HCSD.

70. Throughout her time in HCSD custody, Ms. Huss was a qualified person with a disability because the Hampden County Sheriff's Department regarded her as having a mental or physical impairment within the meaning of the ADA.

71. Because of Ms. Huss's disability, the Hampden County Sheriff's Department personnel intentionally discriminated against her, failed to provide her with adequate treatment for her medical conditions, deprived her of the benefits of its medical programs, and were deliberately indifferent to her serious medical needs.

72. The unlawful discrimination of the Hampden County Sheriff's Department caused Ms. Huss to experience pain, suffering, and death

73. As a result of the defendant's actions, Ms. Huss suffered the damages described above in Paragraphs 37 through 39.

### Count V – False Imprisonment
(against defendant Sheriff Cocchi, in his individual capacity)

74. Plaintiff incorporates by reference the foregoing paragraphs as if set forth here in their entirety.

75. From December 28, 2021 through January 7, 2022, Ms. Huss was held in custody by the HCSD.

76. The court ordered Ms. Huss's release on personal recognizance on December 29, 2021. Yet, Defendant Sheriff Cocchi did not release Ms. Huss. Ms. Huss was not brought before the Leominster District Court, and thereafter released, until January 7, 2022. Ms. Huss was therefore intentionally and unlawfully detained without any legal process for ten days.

77. The defendant's confinement caused Ms. Huss to experience pain and suffering.

78. As a result of the defendant's actions, Ms. Huss suffered the damages described above in Paragraphs 37 through 39.

### Count VI – Intentional Infliction of Emotional Distress ("IIED")
(against defendants Nurse Thompson, Nurse Reale, and
Nurse Bernard, in their individual capacities)

79. Plaintiff incorporates by reference the foregoing paragraphs as if set forth here in their entirety.

80. On December 28, 29, and 30, 2021, and January 2, 2022, defendants Nurse Thompson, Nurse Reale, and Nurse Bernard were aware of Ms. Huss's serious medical needs and deliberately and arbitrarily refused to provide her with the prescription medication, Seroquel, she required for her serious medical needs.

81. Defendants also deliberately and unreasonably refused to provide her with adequate medical treatment once Ms. Huss began vomiting and showing other signs of illness.

82. These defendants' refusal to obtain prompt and appropriate medical treatment caused Ms. Huss to experience anxiety and emotional distress, as evidenced by vomiting and other physical symptoms of anxiety. These physical symptoms were severe and forced Ms. Huss to become admitted to Baystate Medical Center.

83. The defendants' intended to inflict such emotional distress, or knew or should have known that such emotional distress would result from the failure to provide any medical care to Ms. Huss.

84. As a result of the defendants' actions, Ms. Huss suffered the damages described above in Paragraphs 37 through 39.

**JURY DEMAND**

Plaintiff requests a trial by jury for all claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court:

1. Award Plaintiff compensatory damages, consisting of damages for the pain and suffering Defendants caused due to the lack of medical care, loss of liberty, and emotional trauma that has persisted in addition to all medical fees incurred as a result of Defendants' actions, and statutory interest;

2. Award Plaintiff punitive damages against Defendants Nurse Thompson, Nurse Reale, and Nurse Bernard, and John/Jane Does Nos. 1-5;

3. Award Plaintiff attorneys' fees and costs; and

4. Grant such other and further relief as the Court deems just and proper.

Dated: August 12, 2022

Respectfully submitted,

/s/ Caroline Donovan
Christopher Hart (BBO # 625031)
Caroline Donovan (BBO # 683274)
chart@foleyhoag.com
cdonovan@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

*Attorneys for Plaintiff*